THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE GABRIEL LIRA PEREZ, | ) | |
| *Petitioner*, | ) ) ) | No. 25 C 13442 |
| v. | ) ) | Chief Judge Virginia M. Kendall |
| KRISTI NOEM, Secretary of the Department of Homeland Security; and SAMUEL OLSON, Field Office Director, Chicago Field Office, Immigration and Customs Enforcement,[1] | ) ) ) ) ) ) ) | |
| *Respondents*. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Jose Gabriel Lira Pirez ("Petitioner"), a citizen of Mexico, petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2241. (Dkt. 1 at ¶ 6). On November 2, 2025, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner while working at a landscaping site. (*Id.* at ¶ 4). They detained him at the Broadview Processing Center, a federal detention facility in Broadview, Illinois. (*Id.* at ¶ 5). This petition, brought against officers and agencies (collectively, "Respondents") involved in the enforcement of federal immigration laws, challenges the lawfulness of his detention. For the reasons below, the Petition [1] is granted in part.

### BACKGROUND

Petitioner alleges that he entered the United States without inspection in 1995 and has remained in the country since then. (Dkt. 1 at ¶¶ 17-18). Petitioner filed the instant petition on

---

[1] The proper respondent to a noncitizen's habeas petition is the warden of the detention center in which he is detained. *Kholyavskiy v. Achim*, 443 F.3d 946, 949–53 (7th Cir. 2006). The clerk is directed to add Brandon Crowley as a respondent in the case caption per the Government's indication of the proper respondent for the Clay County Detention Center. (Dkt. 7 at 2).

1

November 3, 2025, at which time he was in custody at the Broadview Processing Center. (Dkt. 7 at 1); (Dkt. 1 at ¶ 20). After arresting and detaining Lira Perez, the Government issued him a Notice to Appear for removal proceedings in Detroit, Michigan. (Dkt. 7 at 1). At the time, Lira Perez was scheduled to be transferred to the North Lake Processing Center in Baldwin, Michigan. (*Id.*); (Dkt. 1 at ¶ 19). On November 3, 2025, the same day the Petition was filed, this Court ordered, pursuant to the All Writs Act, 28 U.S.C. § 1651, that the Government refrain from removing Petitioner outside the jurisdiction of the United States and/or transferring Petitioner to any federal judicial district other than those in the States of Illinois, Indiana, or Wisconsin, though if the removal to another U.S. state occurred prior to the entry of the order, Petitioner could stay there during the pendency of the petition so long as the Government did not remove him from the United States. (Dkt. 2); *see Trump v. J.G.G.*, 604 U.S. 670, 672 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)). Pursuant to that order, the Government transferred Lira Perez to the Clay County Detention Center in Brazil, Indiana where he is currently located. (Dkt. 7 at 1-2). The Government is rescheduling and relocating Lira Perez's removal proceedings. (*Id.*).

Respondents contend that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention[2]. (Dkt. 9 at 1-2); (Ex. B, Dkt. 9-1 at 14). Petitioner suggests that 8 U.S.C. § 1226(a) governs detention of noncitizens in his circumstances and that there is no statutory basis for his continuing detention. (Dkt. 6 at ¶¶ 35, 61). He also argues that his detention has violated his Fifth Amendment guarantee of Due Process. (*Id.* ¶¶ 52-58). Lira Perez petitions this Court under 28 U.S.C. § 2241(c) to issue a writ of habeas corpus ordering, among other things, his immediate release from ICE custody or other relief that the Court deems proper. (Dkt. 6 at 17).

---

[2] Respondents adopt and incorporate the arguments they presented in *H.G.V.U., v. Smith et al.*, 2025 WL 2962610 (N.D. Ill. Oct. 20, 2025). (Dkt. 9 at 1-2); (Ex. B, Dkt. 9-1).

This case joins a flurry of § 2241 cases appearing around the country in which courts have nearly unanimously rejected the Government's position.³ Indeed, judges in this District have yet to find any merit in the Government's interpretation of § 1225(b)(2)(A).⁴ This Court shares that view.

## DISCUSSION

### I. Jurisdiction

A district court may grant a petitioner's request for a writ of habeas corpus if the petitioner demonstrates that he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3). "Before and after the enactment in 1875 of the first statute regulating immigration, 18 Stat. 477, [habeas] jurisdiction was regularly invoked on behalf of noncitizens, particularly in the immigration context." *I.N.S. v. St. Cyr*, 533 U.S. 289, 305–06 (2001) (construing statute as leaving habeas in place for noncitizens); *see also Boumediene v. Bush*, 553 U.S. 723, 798 (2008) ("Liberty and security can be reconciled; and in our system they are reconciled within the framework of the law."). Nonetheless, Respondents argue that the Court should not reach the merits of this petition, arguing the Court lacks jurisdiction under 8 U.S.C § 1252(g), (b)(9), and (a)(2)(B)(ii).

Respondents suggest that this Court's jurisdiction is barred by § 1252(g)'s statement that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases,

---

³ *See, e.g.*, *Acosta Roa v. Albarran*, 2025 WL 273923 (N.D. Cal. Sept. 25, 2025) (noting there has been a "tsunami" of cases on this point in the Northern District of California); *Singh v. Lewis*, 2025 WL 2699219 (W.D. Ky. Sept. 22, 2025) (granting § 2241 relief and ordering petitioner released on bond); *Chogllo Chafla v. Scott*, 2025 WL 2688541 (D. Maine Sept. 21, 2025) (granting habeas corpus relief in three consolidated cases and ordering release pending individualized bond hearings before Immigration Judges).
⁴ *See, e.g.*, *Corona Diaz v. Olson*, 2025 WL 3022170, at *4–5 (N.D. Ill. Oct. 29, 2025) (granting § 2241 relief and ordering a bond hearing within seven days); *Ochoa Ochoa v. Noem et al.*, 2025 WL 2938779, at *5 (N.D. Ill. Oct. 16, 2025) (same).

3

or execute removal orders against any alien under this chapter." § 1252(g). But it would be "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). As courts have broadly noted, because "nothing in § 1252(g) precludes review of the decision to confine," it does not apply here. *See Ochoa Ochoa v. Noem*, 2025 WL 2938779, at *3 (N.D. Ill. Oct. 16, 2025) (citing *Carrera-Valdez v. Perryman*, 211 F.3d 1046, 1047 (7th Cir. 2000)).

Respondents next suggest that § 1252(b)(9) poses a jurisdictional bar through a similarly freewheeling construction. Under § 1252(b)(9), "[e]xcept as otherwise provided in this section, no court shall have jurisdiction" to review any questions of law or fact "arising from any action taken or proceeding brought to remove an alien from the United States" except via judicial review of a final order of removal. Nodding to its § 1252(g) decision in *Reno*, the Supreme Court held that § 1252(b)(9) is not so sweeping as to bar review of legal questions concerning detention pursuant to §§ 1225 and 1226. *Jennings v. Rodriguez*, 583 U.S. 281, 292–93, 295 n.3 (2018) ("The question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action. And for the reasons explained above, those legal questions are too remote from the actions taken to fall within the scope of § 1252(b)(9).") (emphasis in original). Again, this question has been squarely rejected by a chorus of courts.

Finally, Respondents point to § 1252(a)(2)(B)(ii), which provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in [their] discretion." But this petition concerns ICE's statutory obligation to provide a bond hearing, which is "not a matter of discretion." *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). For this reason,

4

§ 1252(a)(2)(B)(ii) does not strip the Court of jurisdiction. *See Ochoa Ochoa*, 2025 WL 2938779, at \*4 (Section 1225(a)(2)(B)(ii) did "not bar [the] court from considering [the] habeas petition" as petitioner did "not challenge a discretionary bond denial").

## II.   Basis for Detention

The core question Lira Perez's petition presents is which provision of the Immigration and Nationality Act (INA) governs his detention. Respondents argue the status quo is justified under 8 U.S.C. § 1225(b)(2)(A), which provides for mandatory detention, rather than the procedures outlined in 8 U.S.C. § 1226(a). (Ex. B, Dkt. 9-1 at 14-20).

The relevant portion of § 1225 directs that "[s]ubject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for [full removal proceedings under § 1229]." 8 U.S.C. § 1225(b)(2)(A). The Supreme Court has recognized that, under § 1225(a)(1), an "applicant for admission" is a foreign national who either "arrives in the United States," or is "present" in the country but "has not been admitted." *Jennings*, 583 U.S. at 287. Further, the Court noted that § 1225(b)(2), along with its mandatory detention provision, functions as a "catchall provision" for applicants for admission who are not "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* Alone, this language might sweep quite broadly. But the *Jennings* Court went on to explicitly state that "§ 1226 applies to aliens already present in the United States." *Id.* at 303. Unlike § 1225's mandatory detention provision, Section 1226 provides a "default rule" for noncitizens "already present": *discretionary* detention based on risk of flight and danger to the community. *Id.*

Respondents' attempt to reconcile *Jennings* with its current interpretation of the INA falls flat, as do its gestures toward the BIA's decision in *Yajure Hurtado*, which inexplicably guts traditional practice around bond hearings in immigration proceedings. (Ex. B, Dkt. 9-1 at 17-21). *Yajure Hurtado* is neither binding on nor persuasive to this Court, which now deems that decision incorrect as a matter of law. It is far from the first court to do so. *See, e.g.*, *Perez Padilla v. Noem et al*, No. 25−cv−12462 (N.D. Ill. Oct. 22, 2025) (same). Put simply, *Yajure Hurtado* makes no sense when put into conversation with the longstanding legal process that Congress determined— and the Supreme Court recognized—should govern immigration proceedings for noncitizens living in the United States. That process could not be clearer. *Cf. Jennings*, 583 U.S. at 303 ("While the language of §§ 1225(b)(1) and (b)(2) is quite clear, § 1226(c) is even clearer."). As one court in this district aptly described:

> Under § 1226(a), immigration authorities may make an initial determination as to detention, but noncitizens may then request a bond hearing before an IJ. 8 C.F.R. § 1236.1(c)(8), (d)(1). At that hearing, the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019).

*Ochoa Ochoa*, 2025 WL 2938779, at *4.

Further, as other courts in this district have noted, Respondents' interpretation of § 1225 would also render meaningless the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E), enacted in January 2025, which "amends the Immigration and Nationality Act (INA) to provide an additional category of aliens who are subject to mandatory detention." *H.G.V.U. v. Michael J. Smith et al.*, 2025 WL 2962610, at *5 (N.D. Ill. Oct. 20, 2025); *Jesus Corona Diaz v. Samuel Olson et al.*, 2025 WL 3022170, at *5 (N.D. Ill. Oct. 29, 2025); *see also Freytag v. C.I.R.*, 501 U.S. 868, 877 (1991) (expressing a "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"). Section 1226(c)(1)(E) does not allow bond for a noncitizen who is present in the United States without having been legally admitted if that noncitizen has

6

committed certain crimes, which further suggests a bond hearing is available to those detained under the more general provisions of § 1226(a).

In sum, the Court concludes that § 1226(a), not § 1225(b)(2)(A), properly governs Petitioner's detention.

### III. Procedural Due Process

Further, the Court concludes that the denial of bond based on *Yajure Hurtado* violates procedural due process. The Due Process Clause of the Fifth Amendment applies to noncitizens, "whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. To determine whether a governmental decision violates the Due Process Clause, courts consider "the private interest that will be affected," "the risk of an erroneous deprivation of such interest through the procedures used," and "the Government's interest, including the function involved and the fiscal and administrative burdens that . . . the additional or substitute procedural requirement would entail." *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976); *Simpson v. Brown Cnty.*, 860 F.3d 1001, 1006 (7th Cir. 2017).

Lira Perez has a private interest in his release, and there is a substantial risk of an erroneous deprivation of that interest. That invokes a private interest of the highest order, as "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." *Addington v. Texas*, 441 U.S. 418, 425 (1979). It is certainly true that the Government has an interest in the prompt execution of its removal orders, but that interest is not without limits. In executing removal orders against people like Lira Perez, the government cannot, by law, indefinitely detain noncitizens and deprive them of a bond hearing that would assess their present circumstances. Further, the fiscal and administrative burden on the Government is minimal as, prior to *Yajure Hurtado*, IJs routinely held bond hearings of this type.

7

Respondents invoked *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020) to argue unadmitted noncitizens are "applicants for admission" and therefore possess fewer due process rights. But that case involved a habeas petitioner detained twenty-five yards from the border and "shortly after unlawful entry." *Id.* at 140. In that case, the Court held, that the "sovereign prerogative" of the political branches to "admit or exclude aliens" would be undermined if it "became inoperative as soon as an arriving alien set foot on U.S. soil." *Id.* But once the petitioner properly "effected an entry," whether at an airport or at an unlawful location, the Constitution's due process protections would come into full effect. *Id.*; *see also Zadvydas*, 533 U.S. at 693 (drawing a "distinction between an alien who has effected an entry into the United States and one who has never entered").

*Thuraissigiam* presents a scenario that is a far cry from the one before the Court. Lira Perez has been in this country for more than 25 years. He was pulled from a job site where he was working to provide for himself. Further, the *Thuraissigiam* Court explicitly distinguished long-present noncitizens in a closely related sphere, noting that its earlier holding in *St. Cyr* "reaffirmed that the common-law habeas writ provided a vehicle to challenge detention and could be invoked by aliens already in the country who were held in custody pending deportation." *Thuraissigiam*, 591 U.S. at 104. So even Respondents' best support acknowledges that long-time resident noncitizens, such as Lira Perez, sit in an altogether different category than those seeking admission in the more literal sense.

It may be an open question, then, whether due process protections vest 50 yards, 100 yards, one mile, or two from the border. That is not for this Court to resolve. Wherever the precise line from *Thuraissigiam* may be, it clearly does not apply here.

**IV.     Administrative Exhaustion**

8

Respondents also argue that Lira Perez should exhaust his claims before an immigration judge and the Board of Immigration Appeals before bringing them to the district court. But barring clear Congressional requirements, "sound judicial discretion governs" whether exhaustion should serve as an obstacle to suit in federal court. *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). One good reason to excuse administrative exhaustion that applies with force in this instance is if "appealing through the administrative process would be futile because the agency . . . has predetermined the issue." *Gonzales v. O'Connell*, 355 F.3d 1010, 1016 (7th Cir. 2004). Not only has the administration adopted the position that *all* noncitizens present in the United States who have not yet been "admitted" are subject to mandatory detention without a bond hearing, but the BIA has adopted that approach as well. In *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 255 (BIA 2025), the BIA held that immigration judges (IJs) "lack authority to hear bond requests or to grant bond to [noncitizens] who are present in the United States without admission." A published BIA decision like *Yajure Hurtado* is binding upon every IJ in the country. *See Avila-Ramirez v. Holder*, 764 F.3d 717, 722 (7th Cir. 2014); 8 C.F.R. § 1003.1(g)(1) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board . . . shall be binding on all officers and employees of the Department of Homeland Security or immigration judges in the administration of the immigration laws of the United States."). Because the BIA has predetermined the issue, requiring Lira Perez to request a bond hearing from the EOIR would be futile, leaving him in limbo while indefinitely detained. Accordingly, Lira Perez need not exhaust his remedies in immigration court.

## CONCLUSION

Petitioner's petition for a writ of habeas corpus is granted. Within five calendar days of issuance of this Order, Respondents must either: (1) provide Lira Perez with a bond hearing before

9

an IJ under 8 U.S.C. § 1226(a), at which the Government shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Lira Perez's continued detention; or (2) release Lira Perez from custody, under reasonable conditions of supervision. The parties are to file a joint status report by November 17, 2025, that updates the court on the status of Lira Perez's release status, including whether and when a bond hearing was held, and inform the Court of the reasons for the IJ's decision.

    The Clerk is further ordered to substitute Brandon Crowley, whom Respondents identify as Lira Perez's immediate custodian in Indiana, as the Respondent and to amend the case name in CM/ECF to reflect this change.

                                                      _____
                                                      Virginia M. Kendall
                                                      United States District Judge

Date: November 10, 2025